1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAYMOND HAROLD BUTTE, SR.,

11              Petitioner,              No. CIV S-11-0510 GEB DAD P

12        vs.

13   K. ALLISON,

14              Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 42 U.S.C. § 2254.  Before the court is respondent's motion to dismiss the

18   petition on the grounds that it was filed beyond the applicable one-year statute of limitations.

19   Petitioner has filed his opposition and respondent filed a reply.  On December 12, 2011, the court

20   granted petitioner leave to file a rebuttal brief further addressing his contention that he was

21   entitled to equitable tolling of the statute of limitations.[1]   Thereafter, petitioner filed his rebuttal

22   and respondent filed a response thereto.

23   /////

24

25        [1] Petitioner was advised in that order of the legal standards governing equitable tolling
     and of the fact that it was the petitioner who bore the burden of proof on that issue.  (Doc. No. 41
26   at 1-2)

**BACKGROUND**

On May 2, 2002, following a jury trial, petitioner was convicted in the Shasta County Superior Court of thirty-one counts of sexual offenses perpetrated against his daughter. (Lod. Doc. Nos. 1 at 2 & 2 at 2, lodged May 26, 2011.)  On June 26, 2002, petitioner was sentenced to an aggregate state prison term of 188 years and 8 months and was also ordered to pay $10,000 in restitution, $10,000 as a parole revocation restitution fine and $2,001 direct restitution to the victim. (Lod. Doc. No. 1.)  The Abstract of Judgment indicates that at the time of sentencing petitioner was represented by appointed counsel "J. Mackey." (Id.)

On April 14, 2004, the California Court of Appeal for the Third Appellate District, reversed the judgment of conviction and the sentences imposed on eighteen of the thirty-one counts of conviction and remanded the case for re-sentencing on the remaining counts and for recalculation of petitioner's custody credits. (Lod. Doc. No. 2.)[2]  On May 21, 2004, petitioner filed a petition for review with the California Supreme Court. (Lod. Doc. No. 3.)  On June 30, 2004, that petition for review was summarily denied. (Lod. Doc. No. 4.)

On September 7, 2004, petitioner was re-sentenced by the Shasta County Superior Court to an aggregate term of fifty-three years in state prison. (Lod. Doc. No. 5.)  The restitution amounts originally imposed remained unchanged.  The Abstract of Judgment reflects that at his re-sentencing petitioner was represented by "Deputy Public Defender J. Mackey." (Id. at 1.)

No notice of appeal was filed on behalf of petitioner following his re-sentencing. In fact, petitioner sought no further relief with respect to his judgment of conviction and sentence for over four years until he filed a pro se motion with the Shasta County Superior Court on January 20, 2009, seeking modification of only the restitution order imposed in his case. (Lod.

/////

/////

---

[2]  Petitioner was represented by court-appointed counsel on appeal. (Lod. Doc. No. 2 at 1, n*; Lod. Doc. No. 3 at 1.)

1  Doc. No. 6.)[3]  On January 22, 2009, the Superior Court denied that motion on the grounds that

2  the court lacked jurisdiction because the motion was not filed within 120 days of the original

3  commitment order filed on June 26, 2002.  (Lod. Doc. No. 7.)  On January 15, 2010, petitioner

4  filed another pro se motion for modification of sentence with the Shasta County Superior Court,

5  again challenging the restitution order.  (Lod. Doc. No. 8.)  On January 26, 2010, that motion was

6  denied as procedurally barred and lacking merit.  (Lod. Doc. No. 9.)  On February 10, 2010,

7  petitioner filed a notice of appeal from the denial of his motion for modification of sentence,

8  which was later received by the California Court of Appeal for the Third Appellate District.

9  (Lod. Doc. No. 10.)  On July 2, 2010, the California Court of Appeal affirmed the trial court's

10  order after judgment.  (Lod. Doc. No. 11.)  On July 29, 2010, petitioner filed a petition for a

11  rehearing.  (Lod. Doc. No. 10.)  On July 30, 2010, the petition for rehearing was denied by the

12  state appellate court.  (Lod. Doc. No. 12.)

13       Next, petitioner filed two pro se state habeas petitions.  First, on March 21, 2010,

14  petitioner filed a petition for writ of habeas corpus with the Shasta County Superior Court.[4]

15  (Lod. Doc. No. 13.)  Therein, petitioner raised two grounds for relief:  (1) he was denied a fair

16  trial when the jury was prejudiced by the prosecutor's erroneous inclusion in the charging

17  document of the eighteen sexual abuse counts which were later overturned by the California

18  Court of Appeal on direct appeal; and (2) he was denied his rights to due process, trial by jury

19

20       [3]  There is no proof of service attached to the motion and it is not dated and signed.
Accordingly, this court is unable to apply the mailbox rule in determining the date of its
21  submission to the state court.  See Houston v. Lack, 487 U.S. 266, 276 (1988);  Campbell v.
Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (the mailbox rule applies to state and federal
22  petitions and such petitions are deemed filed when delivered to prison authorities for mailing).

23       [4]  The first petition filed with the Shasta County Superior Court was signed on March 21,
2010.  The Supreme Court has held that the date a petition or appeal is submitted by a prisoner to
24  prison authorities for mailing, as opposed to the date of its receipt by the Clerk of Court, is the
filing date under the so-called mailbox rule.  Houston, 487 U.S. at 276; see also Campbell, 614
25  F.3d at 1058-59; Jenkins v. Johnson, 330 F.3d 1146, 1149 n.1 (9th Cir. 2003) (noting that the
date the petition is signed may be considered the earliest possible date an inmate could submit his
26  petition to prison authorities for filing under the mailbox rule).

1   and subjected to double jeopardy when he was charged in those eighteen counts with offenses

2   that were indistinct and involved overlapping times and dates.

3            On April 28, 2010, the Shasta County Superior Court denied relief finding that the

4   petition was untimely and that petitioner had failed to explain his delay of more than five-years in

5   seeking relief. (Lod. Doc. No. 14 at 1) (citing In re Saunders, 2 Cal. 3d 1033, 1040 (1970), In re

6   Wells, 67 Cal. 2d 873, 875 (1967) and In re Clark, 5 Cal. 4th 750, 756 (1993)).  In addition, the

7   Superior Court denied habeas relief on the grounds that the alleged erroneous inclusion of the

8   eighteen sexual abuse counts had already been addressed by the California Court of Appeal on

9   direct appeal.  (Id. at 2.)   Finally, the Superior Court rejected petitioner's claim that his jury was

10  improperly influenced by the eighteen counts that were later overturned on appeal because the

11  evidence with respect to the additional eighteen counts would likely have been admitted at

12  petitioner's trial under California Evidence Code §§ 1101(b) or 1108 in any event.  (Id.)

13           Thereafter, on May 12, 2010[5], petitioner filed a habeas petition with the California

14  Supreme Court. (Log. Doc. No. 15.)  Therein, petitioner raised the same grounds for relief as

15  were presented in his habeas petition filed with the Shasta County Superior Court as well a third

16  ground for relief in which he challenged the restitution fine imposed in his case.  (Id.)  On

17  December 15, 2010, the California Supreme Court denied the petition with citations to In re

18  Robbins, 18 Cal. 4th 770, 780 (1998) and In re Dixon, 41 Cal. 2d 756 (1953).  (Lod. Doc. No.

19  16.)

20  III.  Federal Habeas Petition

21           The habeas petition pending before this court was signed by petitioner on January

22  20, 2011[6] and filed on January 25, 2011 with the U.S. District Court for the Northern District of

23  California.  (Doc. No. 1.)  On February 23, 2011, this habeas action was transferred to this court.

24  _____

25           [5]  This is the date the state habeas petition was signed by petitioner.

26           [6]  Petitioner inadvertently dated his federal habeas petition "01/20/2010[.]"

In his pending federal habeas application petitioner presents three claims for relief based upon alleged violations of his right to:  (1) "14th Amend[ment] due process, right to trial by jury, prosecutor vindictiveness . . ."; (2) "due process, trial by jury, failure of notice, [d]ouble jeopardy right"; and (3) be free from excessive fines and punishment under the Eighth Amendment.

**MOTION TO DISMISS**

I.  Respondent's Motion

As noted, respondent moves to dismiss the pending federal habeas petition on the grounds that it was filed beyond the applicable one-year statute of limitations.  According to respondent, the statute of limitations for the filing of the federal habeas petition in this case began to run on November 6, 2004, sixty days after petitioner was re-sentenced on September 7, 2004. (MTD (Doc. No. 20) at 3.)  According to respondent, the statute of limitations began to run on November 7, 2004 and ran unabated until it expired on November 6, 2005.  (Id. at 4.) Respondent argues that the petitioner's attempts in 2009 and 2010 to modify the restitution fines imposed as part of his sentence did not impact the finality of his judgment of conviction. Respondent notes that, in any event, in these federal habeas proceedings petitioner is challenging his September 7, 2004 judgment of conviction on substantive grounds and is not contesting the restitution fines imposed as part of his sentence.  (Id.)

Respondent also argues that there is no statutory tolling of the statute of limitations here because petitioner did not file any state collateral challenges to his judgment of conviction before the limitations period for the filing of a federal petition had expired.  (Id.) Respondent notes that petitioner's 2010 state habeas petitions, filed after the statute of limitations for the filing of a federal petition had expired, do not restart the clock and cannot revive the expired federal limitations period.  (Id. at 5.)

Lastly, respondent points out that the Shasta County Superior Court found that petitioner's state habeas petition was untimely by citing the decision in In re Clark, and that the California Supreme Court found his second state habeas petition untimely by citing the decision

1  in In re Robbins in denying relief.  Therefore, respondent argues, the two state habeas petitions

2  filed by petitioner were not properly filed and cannot serve to toll the applicable federal statute of

3  limitations.  Id.

4  II.  Petitioner's Opposition

5  In his opposition to the motion to dismiss, petitioner argues that he is entitled to

6  equitable tolling of the statute of limitations due to the gross negligence of his attorney, and

7  because petitioner is illiterate and was solely dependant on his attorney.  In this regard, petitioner

8  alleges as follows:

On or about September 8, 2004, petitioner's family retained
Attorney Janice Louise Mackey (Former State Bar #164311) to file
a direct appeal from the conviction.  On or about June 2006
Petitioner's family discovered that Ms. Mackey had not filed the
direct appeal, that the time to appeal had run out.  Ms. Mackey did
offer for a sum of $1,200.00 to file a State Habeas Petition in his
behalf challenging the new sentence.  (See Notarized Statement
from Helen Copen, sister of the Petitioner at Exhibit A).  From
2004 to 2009 Petitioner, who is illiterate, (See Exhibit B), and his
family, relied on Ms. Mackey, (who is now disbarred) to file a
petition for writ of Habeas Corpus.  Petitioner did in January 2009
file in pro per (prepared by a fellow inmate) a motion to the Shasta
County Superior Court to Modify the Sentence as it pertained to
the restitution, this petition was denied.  In March 2010, only after
learning that retained attorney Ms. Mackey would not file a
petition because she was disbarred, petitioner with the assistance of
another inmate filed a Post Conviction Collateral challenge to the
conviction and sentence.

(Doc. No. 32 at 2.)  In support of his claim of entitlement to equitable tolling, petitioner has

submitted the declaration of his sister, Helen Copen, who states as follows under penalty of

perjury:

Janice Mackey Told [sic] Mr. Butte SR. [sic] don't worry I will file
your appeal on your sentencing.

That was in September 8th 2004 [sic] after court due to being
repentance. [sic]  We talked to Miss Mackey on numerous
occasions between then and the middle of June 2006.

(Id. at 6.)

/////

1      Petitioner's contention in this regard is quite vague, somewhat puzzling and

2 difficult to decipher.[7]  However, it appears that he is contending as follows.  Despite assurances

3 by his attorney Janice Mackey that an appeal of the re-sentencing would be pursued, in mid-June

4 of 2006 petitioner's sister learned that no notice of appeal was filed following his re-sentencing

5 on September 7, 2004.   Despite this revelation, petitioner's family then paid Mackey $1,200 to

6 file a habeas petition on petitioner's behalf challenging his re-sentencing.  (Id.)  According to

7 petitioner, his family members checked with Mackey "often between June 2006 and Aug[.] 2007

8 to find she had done nothing."  (Id.)  In September 2007, petitioner's sister talked to Mackey who

9 explained that she was waiting "for a loop hole before she could file a writ."  (Id.)  "Around

10

11     [7] As noted above, the Abstracts of Judgment reflect that Mackey was an "appointed"
attorney representing petitioner at his trial and initial sentencing and was designated as the
Deputy Public Defender appointed to represent him at the time of his re-sentencing on September

12 7, 2004.  The record also establishes that petitioner was represented by different court-appointed
counsel on direct appeal.  Yet, throughout petitioner's pleading and submissions, Mackey is

13 sometimes referred to as his "retained" or "hired" counsel.  Elsewhere, petitioner refers to his
wife going to the Public Defender's Office to obtain records showing when Mackey started to be

14 paid by that office "to be my attorney after we ran out of money."  (Doc. 42 at 11.)  Moreover,
petitioner refers to "appeals" and "writs" interchangeably.  If, as it appears, Mackey was

15 petitioner's Deputy Public Defender then the most that she could have been expected to do after
his re-sentencing on September 7, 2004, would have been to file a notice of appeal, as she had

16 presumably done following his sentencing in 2002.  See Roe v. Flores-Ortega, 528 U.S. 470
(2000) (counsel's failure to file a notice of appeal without defendant's consent is not per se

17 deficient).  The California Supreme Court had already denied a petition for review challenging
the judgment on the remaining counts of conviction.  In any event, petitioner was aware that his

18 appointed trial court counsel would not represent him as appointed counsel on appeal because he
had already been through the direct review process once with different court-appointed counsel

19 who had obtained some degree of success on his behalf.  Thus, it would seem that petitioner's
claim that he and his family checked with trial counsel Mackey for almost two years about the

20 status of his "appeal" only to learn that no appeal had been pursued, rings hollow.  Petitioner
repeatedly assets that when he and his family did learn  in June of 2006 that Mackey had misled

21 them about the appeal, they immediately paid her $1200 to file a state habeas petition on his
behalf.  That allegation is odd and/or suspect in many respects.  Why would you retain someone

22 who you claim you just discovered had misled you for two years?  Had Mackey left the Public
Defenders Office by this time?  Because the matter is presented on a motion to dismiss the

23 petition as untimely, the court does not have the full record before it from which it might be able
to determine the true history of petitioner's representation.  Unfortunately, respondent has chosen

24 not to address any of the oddities perceived by the court in petitioner's representations and has
instead elected to assume that petitioner's allegations regarding Mackey's conduct are true.  The

25 court will do the same, having determined that a precise determination of these facts is not
necessary to resolution of the pending motion in light of petitioner's lengthy delay in seeking

26 federal habeas relief.

1  March 2008 Miss Mackey told us if she could not find a loop hole or for some reason did not file

2  Mr. Butte's writ she would return our money and paper work that she had ask for." (Id.)  In

3  2009, petitioner gave his sister and James West a power of attorney because Mackey would not

4  discuss the case with them without one and in 2010, they "went several times to talk to Miss

5  Mackey to see if she was working on the case and to give her a copy of power of attorney that she

6  ask for." (Id.)  They "went back several times" and attorney Mackey refused to talk to them.

7  Finally, when asked why she did not respond to petitioner's letters, attorney Mackey divulged

8  that she "could no longer practice law." (Id.)[8]

9          Petitioner argues that under these circumstances he is entitled to equitable tolling

10  of the statute of limitations for the filing of a federal habeas petition due to the failures and gross

11  incompetence of attorney Mackey. (Id. at 3.)  Petitioner has submitted copies of Mackey's

12  California State Bar records reflecting that she was suspended from the practice of law on March

13  8, 2010 and as of May 20, 2011 was still ineligible to practice. (Id. at 9-13.)  Petitioner argues

14  that "[t]he actions of a hired attorney should not be held against a petitioner who presents

15  evidence of his illiteracy, and who is solely dependant upon his attorney." (Id.)  According to

16  petitioner, neither he nor his family were "aware of any filing deadlines under the AEDPA[.]"

17  (Id.)

18          As to his claimed illiteracy, petitioner has submitted a prison classification chrono

19  dated July 18, 2002, which describes him as a "50-year old illiterate white male . . . involved in

20  the Mental Health program . . . and presently taking medication." (Id. at 15.)

21  III.  Respondent's Reply

22          Respondent contends that the following facts are undisputed.  The finality of

23  direct review in petitioner's case occurred on November 6, 2004, sixty days after his re-

24  sentencing and that the one-year statute of limitations for the filing of a federal habeas petition

25  

26          [8]  According to petitioner and his family, attorney Mackey never returned the $1,200 she
was paid.

therefore expired on November 6, 2005, plus any time for tolling.  (Doc. No. 33 at 1.)  Petitioner

filed a habeas petition filed with the Shasta County Superior Court on March 21, 2010 and

denied on April 28, 2010, and a habeas petition filed with the California Supreme Court on May

12, 2010 and denied on December 15, 2010.

A.  Attorney Misconduct

Respondent argues that attorney miscalculation or negligence does not warrant

equitable tolling.  (Doc. No. 33 at 3) (citing Lawrence v. Florida, 549 U.S. 327, 336-37 (2007)

and Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001)).   Rather, according to respondent,

only egregious conduct of an attorney may be grounds for equitable tolling.  (Id.) (citing Spitsyn

v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)).  Respondent notes that petitioner has failed to offer

any proof that he or his family retained Mackey in 2004 to file a direct appeal on his behalf

following re-sentencing.  (Id.)  Respondent observes that although petitioner claims that it took

almost two years for he and his family to discover that an appeal had not been filed on his behalf,

there is no explanation why it took them so long to learn of the status of petitioner's case.  (Id. at

3-4.)  Respondent also notes that petitioner has not presented a retainer agreement or any other

proof showing that in June of 2006, Mackey was retained to file a state habeas petition on his

behalf.  Thus, according to respondent, petitioner has failed to carry his burden of establishing

that for five years, from 2004 to 2009, he relied on attorney Mackey to pursue both an appeal and

a state habeas petition but they she failed to do so.

Respondent also contends that the declaration of petitioner's sister, Helen Copen,

lacks reasonable specificity.  (Id.)  Respondent observes that Ms. Copen only generally alleges

that "we" talked to Mackey on numerous occasions between September 2004 and June 2006, but

does not specify who the "we" consists of, does not provide specific dates nor provides any

details of the discussions that allegedly took place with Mackey over the course of two years.

(Id.)  Likewise, respondent contends that Ms. Copen has not provided specific dates or details of

the contents of her alleged conversations with Mackey about the status of petitioner's case in

June 2006 and August 2007, nor has she submitted a copy of any retainer agreement.  (Id.)

Respondent contends that petitioner's own contentions, if believed, are that after waiting two

years to learn that Mackey had failed to file an appeal on his behalf, petitioner and his family

waited another three years to learn that Mackey also did not file a state habeas petition for him

and was no longer licensed to practice law.  (Id.)  Respondent argues that even assuming

petitioner did not learn that  Mackey had failed to file a state habeas petition at the earliest until

2007, he still did nothing to pursue relief until filing his first state habeas petition in 2010 and has

failed to explain his lengthy delay in doing so.  (Id.)  Moreover, respondent contends, it is even

more damaging that petitioner filed a motion to modify his restitution fine in 2009, but did not

pursue habeas relief in state court until 2010.  (Id. at 4-5.)  Respondent argues that petitioner has

failed to show that he made any reasonably diligent attempts to ensure that his federal habeas

petition was timely filed.  (Id. at 5.)

       In any event, respondent notes, petitioner's alleged attempts to have Mackey file a

state habeas petition on his behalf all occurred after the statute of limitations for filing a federal

habeas petition had already expired.  (Id.)  Any argument for equitable tolling based on Mackey's

alleged misconduct cannot excuse petitioner's delay in filing a timely federal habeas petition.   In

conclusion, respondent argues that petitioner has failed to meet his burden of establishing that he

is entitled to equitable tolling based upon egregious misconduct of counsel.  (Id.)

     B.  Illiteracy and Ignorance of the Law

       Respondent argues simply that illiteracy and lack of knowledge of the law have

been rejected as providing a basis for equitable tolling of the AEDPA statute of limitations.  (Id.

at 5-6) (citing Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) and Turner v. Johnson,

177 F.3d 390, 392 (5th Cir. 1999)).

     C.  Delayed Commencement of Statute of Limitations Under 28 U.S.C. § 2244(d)(1)(D)

       Petitioner contends that the California Supreme Court erred in finding his state

habeas petition untimely and that in any event he has "'new precedents and changes in law'" that

1  "'would make [his] writ timely in the State courts[,]'" which was not known to him until late

2  2009. Respondent counters that petitioner has "not provided details of what the new precedents

3  are or how they affect his claims." (<u>Id.</u> at 6.) Respondent acknowledges that the statute of

4  limitations for the filing of a federal habeas petition may run from the date the factual predicate

5  of a claim could have been discovered through the exercise of due diligence. (<u>Id.</u> at 7.)

6  However, respondent argues that petitioner knew of the factual predicate for his habeas claims

7  since September 7, 2004, when he was re-sentenced. (<u>Id.</u>) Respondent asserts that a belated

8  appreciation of the legal significance of already known facts does not delay commencement of

9  the statutory period. (<u>Id.</u>) Finally, respondent argues that petitioner has not established that he

10 exercised due diligence in discovering his claims for habeas relief. (<u>Id.</u>)

11 IV. <u>Petitioner's Rebuttal</u>

12        Petitioner argues that he did "not have the mental ability" to discover Mackey's

13 failure to file an appeal following his re-sentencing and that he was required to "rely on outside

14 resources (family, etc.) who may not be aware of such things, or, as in this case, a trusted legal

15 representative who took his money and failed to file legal paperwork on time[.]" (Doc. No. 42 at

16 2-3.) Plaintiff contends that in prison he expressed concern regarding the delay in his appeal but

17 that a mental health caregiver told him that in the interest of his mental health, he should "rely on

18 his attorney, knowing that his family had hired an attorney for his interests." (<u>Id.</u> at 3.)

19        Petitioner asserts that Mackey charged his family money, took advantage of

20 petitioner's "lack of any formal education and low tested IQ" and did no work on his case while

21 telling his family that she was working on it. (<u>Id.</u>) Petitioner contends that his sister's affidavit

22 confirms that she was unaware of any filing deadlines and that she was "'put off'" by Mackey

23 when she "called about progress[.]" (<u>Id.</u>) Petitioner argues that it would be "fundamental error

24 and a miscarriage of justice for this Court to rely upon the Respondent's contention that

25 Petitioner should have been more involved in his appeal." (<u>Id.</u> at 4.) Petitioner also argues that

26 he "should not be held liable for the bad faith, dishonesty, or professional misconduct of his hired

and trusted attorney, particularly given his demonstrated mental disabilities." (Id.) Petitioner

asserts that Mackey "committed outright fraud" and that it "took a lot of digging, and a power of

attorney, for the family to discover the disbarment and her fraudulent actions." (Id.)

In a declaration attached to his rebuttal brief, petitioner makes the following

assertions. He suffers from mental and physical disabilities. (Id. at 9.) He was in special

education and believes his "Tabe Score" will show a low reading score. (Id.) His 2010 motion

to modify his restitution fine should be construed as a belated appeal. (Id. at 10.) Petitioner

contends that Mackey would not accept collect calls and that he wrote to her to "ask to file my

things' [sic] in court that she was payed [sic] to do." (Id. at 11.) Mackey told the California

State Bar that petitioner's records were provided to his niece, Jammie. (Id.) However, petitioner

asserts that his niece did not know how to file a writ on his behalf. (Id.) Petitioner claim that the

state courts erred in finding that his habeas petitions were untimely. (Id. at 12.) Finally,

petitioner argues that the victim lied at his trial, is not his biological daughter and that the

conviction was obtained in violation of his constitutional rights and his federal habeas petition

should be heard on the merits. (Id. at 13.)

In support of his rebuttal arguments petitioner has submitted a notarized statement

from his brother, William Butte, who states that in 2006 he contributed $300 to have Mackey file

a writ on petitioner's behalf and that other members of the family also made payments for that

purpose totaling $1,200. (Id. at 16.) Petitioner also has submitted another notarized statement

under penalty of perjury from his sister, Helen Copen, which states that Mackey represented

petitioner at his trial, filed his first appeal in 2002, and represented petitioner during his re-

sentencing. (Id. at 18.)[9]  In all other respect, the statement merely repeats Ms. Copen's claims

regarding Mackey's deceptive dealings with her over petitioner's case.

---

[9]  However, as noted above, the most Mackey could have done in 2002 was to file a
notice of appeal on petitioner's behalf. The record establishes that she did not represent
petitioner on appeal. Court-appointed counsel through the Central California Appellate Program
did.

1      Petitioner has also submitted mental health records spanning the period from 2003

2    through 2010.  Those records reflect that petitioner did not suffer from hallucinations or

3    delusions, was not suicidal, did not pose a current risk of violence, and suffered from occasional

4    slight depression and anxiety.  (Id. at 22-34.)  Petitioner's medical records from 2004 show that

5    he was seeing a staff psychologist about memories of childhood abuse and was receiving

6    medication for depression.  (Id. at 36-61.)  His medical records from 2005 show that petitioner

7    was doing well, was stabilized with medication and displayed symptoms of occasional

8    depression or anxiety.  (Id. at 63-87.)

9    V.  Respondent's Supplemental Briefing

10      Respondent argues that petitioner's rebuttal merely repeats his previous equitable

11   tolling argument.  (Doc. No. 44 at 2.)  Respondent notes that petitioner now claims that his

12   reliance on his attorney was heightened because of his mental disabilities.  (Id.)  Respondent

13   contends that the numerous attachments to petitioner's rebuttal brief do not show that petitioner

14   suffered from a mental disability that would entitle him to equitable tolling of the AEDPA statute

15   of limitations.  (Id.)

16      Respondent contends that none of petitioner's argument address the critical fact

17   that he began pursuing relief on his own behalf no later than January 13, 2009, the date on which

18   he signed his motion seeking a modification of his restitution fine from the Shasta County

19   Superior Court.  (Id.)  Respondent asserts that the record before the court establishes that

20   petitioner was aware at the very latest by January 13, 2009 of Mackey's alleged inaction, yet he

21   did not seek federal habeas relief until two years later on January 25, 2011.  (Id.)  Respondent

22   argues that even if Mackey engaged in the egregious behavior alleged by petitioner, those

23   circumstances did not impede or prevent him from filing a federal habeas petition as of January

24   2009.  (Id.)  At a minimum, respondent argues, even if all of petitioner's allegations are true, he

25   is not entitled to equitable tolling of the AEDPA statute of limitations for the period between

26   January 2009 and January 2011.

As to petitioner's argument that his mental disability provides grounds for equitable tolling of the applicable statute of limitations, respondent asserts that such a claim is subject to a two-part inquiry.  (Id. at 3) (citing Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010)). First, a petitioner must show a mental impairment that was an extraordinary circumstance beyond his control because it was so severe that he was unable to rationally or factually understand the need to timely file, or that he was rendered unable to personally prepare and file a petition.  (Id.) Second, petitioner must show diligence in the pursuit of his claims.  (Id.)

Respondent argues that petitioner's claim of mental incompetency is vague and that he fails to offer details of his alleged mental illness, the time period he suffered from that impairment, and how his condition prevented him from challenging his conviction in a timely manner.  (Id. at 4.)  Further, respondent argues that the documents submitted by petitioner do not show any severe impairment during the relevant time frame that could constitute extraordinary circumstance justifying equitable tolling.  (Id.)  In fact, respondent contends that prison records pertaining to the relevant period of November 7, 2004 through November 7, 2005, describe petitioner as being stable, within normal limits ("WNL"), cooperative, and functioning.  (Id.) Other documents from the five year-plus period between November 7, 2005 and January 25, 2011, when the pending federal habeas petition was filed, also do not suggest the existence of such extraordinary circumstances according to respondent.  (Id.)  Respondent acknowledges that those records do reflect that petitioner was treated for depression and that he was prescribed psychotropic medications; however, respondent notes that they also reflect petitioner was responding well to the medications.  (Id.)  As to petitioner's cognitive functioning, respondents contend that the records submitted by petitioner show that he suffered from depression, but that remained alert, oriented, organized, coherent, and cooperative.  (Id. at 5.)  In fact, respondent points out that during part of the relevant time frame petitioner was attending school, participated in mental health treatment programs only as an outpatient and was housed in the general prison population.  (Id.)  Respondent concludes that petitioner's prison mental health records do not

reflect a severe mental disorder but do reflect that during his incarceration his condition

improved.  (Id.)  Respondent also notes that petitioner was able to complete the Adult Basic

Education II course on January 21, 2009, thus demonstrating  that by at least that date he was

able to understand the need to file a timely habeas petition, was able to prepare such a petition

and could have effectuated its filing.  (Id.)

Respondent also argues that petitioner was simply not diligent in seeking federal

habeas relief.  (Id. at 6.)  According to respondent, petitioner's own court filings evidence the fact

that by January of 2009, Mackey's alleged misconduct did not impede petitioner in seeking

habeas relief.  Yet, respondent notes, petitioner waited another two years to file his federal

petition.  (Id.)  According to respondent, petitioner has not carried his burden of demonstrating

that he exercised reasonable diligence throughout the many years between his judgment of

conviction becoming final and the date his federal habeas petition was filed.  (Id.)  Therefore,

respondent concludes, petitioner has failed to establish that he is entitled to equitable tolling of

the statute of limitations.  (Id.)

**ANALYSIS**

I.  The AEDPA Statute of Limitations

On April 24, 1996, Congress enacted AEDPA which amended 28 U.S.C. § 2244

by adding the following provision:

 (d)(1)  A 1-year period of limitation shall apply to an application
for a writ of habeas corpus by a person in custody pursuant to the
judgment of a State court.  The limitation period shall run from the
latest of –

(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review;

(B) the date on which the impediment to filing an
application created by State action in violation of the Constitution
or laws of the United States is removed, if the applicant was
prevented from filing by such State action;

/////

1           (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been

2   newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

3

4           (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

5

6           (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the

7   pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

8   The one-year AEDPA statute of limitations applies to all federal habeas corpus petitions filed

9   after the statute was enacted and therefore applies to the pending petition. See Lindh v. Murphy,

10  521 U.S. 320, 322-23 (1997).

11  II.  Application of § 2244(d)(1)(A)

12          For most prisoners, the limitation period for the filing of a federal habeas petition

13  begins to run on the date on which the judgment of conviction becomes final by the conclusion of

14  direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

15  In this case, the parties do not dispute that petitioner's judgment of conviction became final on

16  November 6, 2004, sixty days after petitioner was re-sentenced in the Shasta County Superior

17  Court. See Burton v. Stewart, 549 U.S. 147, 156-57 (2007) (holding that the "limitations period

18  did not begin until both . . . conviction *and* sentence 'became final by the conclusion of direct

19  review or the expiration of the time for seeking such review'"); see also Villarruel v. McDonald,

20  No. CV 10-7176 JST (FMO), 2011 WL 4499915, at *3 (C.D. Cal. June 27, 2011) ( "The trial

21  court re-sentenced petitioner on June 20, 2007.  Petitioner did not appeal after being re-

22  sentenced.  Therefore, his conviction and sentence became final 60 days later, on August 20,

23  2007, when the time to appeal expired.") (citations omitted), report and recommendation adopted

24  by 2011 WL 4499720 (C.D. Cal. Sept. 28, 2011).  Therefore, the one-year statute of limitations

25  for the filing of a federal habeas petition in this case began to run on November 7, 2004.

26  /////

1    To the extent that petitioner seeks a delayed commencement of the statute of

2    limitations pursuant to 28 U.S.C. § 2244(d)(1)(D), the court finds that petitioner's argument

3    lacks merit.  Under that provision, the limitations period for the filing of a federal habeas petition

4    begins to run "when the prisoner knows (or through diligence could discover) the important facts,

5    not when the prisoner recognizes their legal significance."  Hasan v. Galaza, 254 F.3d 1150,

6    1154 (9th Cir. 2001) (reversing dismissal of a habeas petition on statute of limitations grounds

7    where the petitioner did not know at the time of his trial, or have reason to know, added facts

8    later learned which materially changed the circumstances and provided a good-faith basis upon

9    which to seek habeas relief).[10]  See also Rhoades v. Henry, 598 F.3d 511, 519 (9th Cir. 2010).

10   Here, petitioner argues that it was not until late 2009 that he became aware of case law that

11   would "make my writ timely in the state courts[.]"  (Doc. No. 32 at 21.)  However, it is the

12   factual predicate for petitioner's habeas claims, not the discovery of case law, that is required for

13   the application of §2244(d)(1)(D).  Therefore, § 2244(d)(1)(D) does not apply here.

14   III.  Application of § 2244(d)(2)

15   "The time during which a properly filed application for State post-conviction or

16   other collateral review with respect to the pertinent judgment or claim is pending shall not be

17   counted" toward the AEDPA statute of limitations.  28 U.S.C. § 2244(d)(2).  The statute of

18   limitations is not tolled during the interval between the date on which a judgment becomes final

19   and the date on which the petitioner files his first state collateral challenge because there is no

20   case "pending."  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  Once a petitioner

21   commences state collateral proceedings, a state habeas petition is "pending" during one full

22   round of review in the state courts, including the time between a lower court decision and the

23   /////

---

24   [10]  As one district court has explained, the factual predicate for the habeas claim in Hasan,
25   "was carefully and actively hidden away by the persons involved, and it was only through a
     stroke of fortune that the proof did not remain forever buried."  Flores v. Hedgpeth, No. CV 08-
26   03329 SJO (RZ), 2008 WL 4196629, at *5 (C.D. Cal. Sept. 10, 2008).

filing of a new petition in a higher court, as long as the intervals between the filing of those petitions are "reasonable."  Carey v. Saffold, 536 U.S. 214, 222-24 (2002).

Here, petitioner is not entitled to statutory tolling because both of the habeas petitions he filed before state courts were submitted over four years after the one-year statute of limitations for the filing of a federal petition had expired.  "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.), cert. denied 540 U.S. 924 (2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001), cert. denied 538 U.S. 949 (2003).  Accordingly, petitioner is not entitled to statutory tolling of the AEDPA statute of limitations.

III.  Equitable Tolling

The United States Supreme Court has confirmed that the AEDPA statute of limitations "is subject to equitable tolling in appropriate cases."  Holland v. Florida, __ U.S. __, ___, 130 S. Ct. 2549, 2560 (2010).  See also Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011); Lakey v. Hickman, 633 F.3d 782, 784 (9th Cir. 2011); Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010).[11]  Indeed, because § 2244(d) is not jurisdictional, it is "subject to a 'rebuttable presumption' in favor of 'equitable tolling'"  Holland, 130 S. Ct. at 2560 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990)).  See also Lee v. Lampert, 653 F.3d 929, 933 (9th Cir. 2011) (en banc).

However, "a 'petitioner' is 'entitled to equitable tolling' only where he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland 130 S. Ct. at 2562 (quoting Pace v.

/////

/////

---

[11]  The Ninth Circuit had previously so held.  See Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 n.2 (9th Cir. 2009); Calderon v. U.S. District Court for the Central District of California (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (en banc).

1  DiGuglielmo, 544 U.S. 408, 418 (2005)).[12]  See also  See also Doe, 661 F.3d at 1011; Lakey, 633

2  F.3d at 784; Porter, 620 F.3d at 959; Harris v. Carter, 515 F.3d 1051, 1054 (9th Cir. 2008);

3  Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003).  Thus, equitable tolling is

4  appropriate only when external forces, rather than a petitioner's lack of diligence, account for the

5  failure to file a timely petition.  See Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011);

6  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (The petitioner must show that "the

7  extraordinary circumstances made it impossible to file the petition on time."); Miles v. Prunty,

8  187 F.3d 1104, 1107 (9th Cir. 1999).  To meet this standard a petitioner must demonstrate that

9  some extraordinary circumstance stood in his way of filing a timely federal habeas petition and

10  that any such extraordinary circumstance was the cause of his late-filed petition.  See Lakey, 633

11  F.3d at 786; Bryant v. Ariz. Atty. Gen., 499 F.3d 1056, 1061 (9th Cir. 2007); Allen v. Lewis, 255

12  F.3d 798, 800-01 (9th Cir. 2001).  It is the petitioner who bears the burden of demonstrating the

13  existence of grounds for equitable tolling.  See Pace, 544 U.S. at 418; Doe, 661 F.3d at 1011;

14  Roberts v. Marshall, 627 F.3d 768, 772 (9th Cir. 2010); Espinoza-Matthews v. California, 432

15  F.3d 1021, 1026 (9th Cir. 2005); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

16        Courts are expected to "take seriously Congress's desire to accelerate the federal

17  habeas process."  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1289 (9th Cir.

18  1997), overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly), 163

19  F.3d 530 (9th Cir. 1998).  See also Lakey, 633 F.3d at 786 ("The high threshold of extraordinary

20  circumstances is necessary 'lest the exceptions swallow the rule.'"); Porter, 620 F.3d at 959;

21  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) ("[T]he threshold necessary to trigger

22  equitable tolling [under the AEDPA] is very high, lest the exception swallow the rule.");

23  Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's standard as

24

25  [12] "The diligence required for equitable tolling purposes is 'reasonable diligence' . . . not
   'maximum feasible diligence.'"  Holland v. Florida, __ U.S. __, ___, 130 S. Ct. 2549, 2565
26  (2010).

1    setting a "high hurdle" to the application of equitable tolling).  To this end, "the circumstances of

2    a case must be 'extraordinary' before equitable tolling can be applied[.]"  Holland, 130 S. Ct. at

3    2564.  Whether a party is entitled to equitable tolling "turns on the facts and circumstances of a

4    particular case."  Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003) (quoting Fisher v.

5    Johnson, 174 F.3d 710, 713 (5th Cir. 1999)).  See also Holland, 130 S. Ct. at 2565 (leaving "to

6    the Court of Appeals to determine whether the facts in this record entitle Holland to equitable

7    tolling, or whether further proceedings, including an evidentiary hearing, might indicate that

8    respondent should prevail"); Doe, 661 F.3d at 1012.

9              Here, the court considers whether equitable tolling applies for the time period

10   from November 7, 2004, when the statute of limitations for the filing of a federal habeas petition

11   began to run in petitioner's case, to November 6, 2005, when the one-year limitations period

12   expired.  If equitable tolling does not apply to this critical time period, petitioner's arguments in

13   favor of equitable tolling during subsequent periods are rendered irrelevant.  Petitioner has

14   advanced the following two arguments in support of equitable tolling for this relevant time

15   period:  (1) malfeasance or gross negligence by his attorney, and (2) his own mental disabilities.

16   Below the court addresses both.

17           A.  Alleged Attorney Malfeasance

18                1.  Extraordinary Circumstance Requirement

19              Petitioner contends that he is entitled to equitable tolling of the AEDPA statute of

20   limitations because of the gross negligence and incompetence of attorney Janice Mackey, who

21   allegedly failed to file a notice of appeal after petitioner's re-sentencing by the Shasta County

22   Superior Court in 2004.  Petitioner's sister contends that she talked to Mackey "on numerous

23   occasions" about pursuing an appeal.  (Doc. No. 32 at 6.)  However, petitioner claims that it was

24   not until June of 2006 that his sister learned that no appeal had been filed on his behalf.  (Doc.

25   No. 32 at 6.)  Petitioner contends that neither his family nor he were aware of any filing deadlines

26   and that they were "solely dependant upon his attorney."  (Id. at 3.)

1    The Ninth Circuit has held:

2    Equitable tolling may be warranted in instances of unprofessional
     attorney behavior; however, the AEDPA deadline will not be tolled
3    for a garden variety claim of excusable attorney neglect or mistake.
     See Spitsyn [v. Moore], 345 F.3d [796] at 800-02; see also Irwin v.
4    Dept' of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112
     L.Ed. 2d 435 (1990) ("[T]he principles of equitable tolling
5    described above do not extend to what is at best a garden variety
     claim of excusable neglect."). Thus, in cases where a petitioner
6    claims his attorney was the cause of the untimeliness, courts must
     examine if the claimed failure was one of mere negligence by the
7    attorney, such as inadvertently miscalculating a filing deadline in a
     non-capital case, see Frye v. Hickman, 273 F.3d 1144, 1146 (9th
8    Cir. 2001), or a *sufficiently egregious* misdeed like malfeasance or
     failing to fulfill a basic duty of client representation, see Spitsyn,
9    345 F.3d at 801 (citing Baldayaque v. United States, 338 F.3d 145,
     152 (2d Cir. 2003)).

10

11   Doe, 661 F.3d at 1011-12. In Doe, the petitioner's former counsel was paid "a handsome

12   $20,000 advance" to file a federal habeas petition over a year in advance of the AEDPA deadline

13   for filing. Id. at 1012. Petitioner provided counsel with his files and made repeated inquiries

14   regarding the progress of his case. Id. Counsel made numerous promises to file a timely federal

15   habeas petition but, in fact, never filed a petition. Id. To make matters worse, when the

16   petitioner eventually sought the return of his files it took the attorney six months to do so. The

17   Ninth Circuit agreed that the "utterly deficient and unprofessional" services rendered by the

18   attorney constituted "extraordinary circumstances" which prevented the timely filing of a federal

19   habeas petition. Id. at 1012. See also Porter v. Ollison, 620 F.3d 952, 959-61 (9th Cir. 2010)

20   (finding that attorney's misconduct and eventual resignation from the bar in the face of

21   disciplinary proceedings for running a habeas corpus "writ mill" constituted extraordinary

22   circumstances and remanding on the issue of whether equitable tolling was nonetheless not

23   warranted due to petitioner's own lack of diligence or because the attorney's conduct still did not

24   prevent petitioner from filing timely petition); Spitsyn, 345 F.3d at 800-01 (equitable tolling

25   could be justified where an attorney was retained to file a federal habeas petition, failed to do so,

26   and disregarded requests to return files pertaining to petitioner's case until well after the date the

21

1  federal petition was due but remanding on issue of whether petitioner had exercised reasonable

2  diligence in ultimately filing his petition).

3           Petitioner claims this is such a case.  However, petitioner's allegations concerning

4  Mackey's malfeasance are so vague that the court is unable to determine if counsel's alleged

5  inaction was serious misconduct possibly entitling petitioner to equitable tolling.  Although

6  petitioner and his sister may have believed that Mackey would file a notice of appeal following

7  his re-sentencing, petitioner has failed to present sufficient details as to when, where, and what

8  precisely was explained to him or his family regarding the pursuit of an appeal and Mackey's role

9  in that effort.  Petitioner has come forward with no substantial or persuasive evidence supporting

10 his apparent claim that Mackey promised to file a notice of appeal on his behalf following his re-

11 sentencing.  His sister's vague assertion that she and other family members spoke to Mackey

12 between September 2004 and June 2006 does not suggest, let alone establish, that petitioner

13 would have been justified in a belief that an appeal was being pursued on his behalf at that time.[13]

14          Given petitioner's lack of specificity and his failure to come forward with

15 evidence in support of his contention, the court cannot conclude that he has carried his burden of

16 establishing that "extraordinary circumstances" existed which might justify equitable tolling of

17 the AEDPA statute of limitations in his case.  See Pace, 544 U.S. at 418; Doe, 661 F.3d at 1011;

18 Roberts, 627 F.3d at 772; Espinoza-Matthews, 432 F.3d at 1026; see also Lakey v. Hickman, 633

19 F.3d 782, 786 (9th Cir. 2011) ("The high threshold of extraordinary circumstances is necessary

20

21          [13] The court has also reviewed the records submitted by petitioner concerning Mackey's
   status with the California State Bar.  Those records establish the following.  Mackey received a
22 public reproval from the State Bar in 2004 "for failing to perform legal services competently or
   refund an unearned fee."  (Doc. No. 32 at 13.)  Despite that action, her license to practice law
23 remained active.  (Id. at 9.)  Subsequently, Mackey's license to practice law was suspended for
   three months from February 22, 2008 to May 22, 2008.  (Id. at 8-9.)  She went on inactive status
24 on February 9, 2009 and was suspended on July 11, 2009 for failure to pay Bar fees.  (Id. at 9-
   11.)  While these circumstances certainly do not speak well of Mackey's professionalism, they do
25 not aid petitioner in meeting his burden of establishing that  actions taken by Mackey following
   his re-sentencing constitute "extraordinary circumstances" possibly justifying equitable tolling of
26 the statute of limitations.

1   lest the exceptions swallow the rule."); <u>Soto v. Lopez</u>, No. CV 10-3525 AHM(JC), 2011 WL

2   6090167 (C.D. Cal. April 1, 2011) ("[P]etitioner's conclusory and unsupported allegations are

3   simply insufficient to meet his burden of demonstrating his entitlement to equitable tolling of the

4   limitations period."), <u>report & recommendations adopted by</u> 2011 WL 6091080 (C.D. Cal. Dec.

5   5, 2011); <u>Meda v. Curry</u>, No. 1:09-cv-0161-SMS-HC, 2010 WL 2195828, at *6 (E.D. Cal. May

6   27, 2010) (concluding that petitioner failed to met his burden when he failed to provide specific

7   facts to support his contention that he believed counsel would file a further appeal).  In addition,

8   as other courts have determined, mere inaction by an attorney does not provide grounds for

9   equitable tolling.  <u>See Morgan v. Ryan</u>, No. CV-10-2215-PHX-ROS (JFM), 2011 WL 6296763,

10   at *10 (D. Ariz. Nov. 28, 2011) ("[M]ere inaction by counsel [in failing to file a timely state

11   petition] does not establish extraordinary circumstances justifying equitable tolling . . . . [and]

12   Petitioner makes no suggestion of any facts upon which the Court could base a finding of the

13   kind of extraordinary malfeasance by counsel which would justify equitable tolling."), <u>report and</u>

14   <u>recommendation adopted by</u> 2011 WL 6296758 (D. Az. Dec. 16, 2011).

15              2.  Diligence Requirement

16              Moreover, even if petitioner had satisfied his burden of establishing that Mackey's

17   conduct in his case meets the "extraordinary circumstances" requirement, he has failed to meet

18   his burden of establishing that he exercised diligence in pursuing habeas relief and that his failure

19   to file a timely federal petition was attributable to Mackey's conduct and not his own.  <u>See Hogg</u>

20   <u>v. Curry</u>, No. C 09-1380 RMW (PR), 2010 WL 532430, at *3 (N.D. Cal. Feb. 9, 2010)

21   ("Attorney malfeasance standing alone, however, does not warrant equitable tolling.  The

22   prisoner must demonstrate reasonable diligence to get the benefit of equitable tolling in

23   circumstances evidencing attorney misconduct."); <u>Thompson v. Tilton</u>, 2009 WL 596605, at *10

24   n.5 (C.D. Cal. Mar. 6, 2009) ("[A]ttorney malfeasance without more is not sufficient to warrant

25   equitable tolling. . . .[and] requires District Courts to examine the petitioner's due diligence in

26   pursuing the matter under the specific circumstances he faced.").

1    As noted above, "a 'petitioner' is 'entitled to equitable tolling' only where he

2 shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

3 circumstance stood in his way' and prevented timely filing." Holland 130 S. Ct. at 2562. "The

4 diligence required for equitable tolling purposes is 'reasonable diligence' . . . not 'maximum

5 feasible diligence.'" Id. at 2565. See also Doe, 661 F.3d at 1012. "The purpose of requiring

6 habeas petitioners to demonstrate diligence in order to be entitled to . . . equitable tolling is to

7 ensure that the extraordinary circumstances faced by petitioners . . . – and not their lack of

8 diligence – were the cause of the tardiness of their federal habeas petitions." Roy, 465 F.3d at

9 973. See also Doe, 661 F.3d at 1012-13; Spitsyn, 345 F.3d at 802 (""[I]f the person seeking

10 equitable tolling has not exercised reasonable diligence in attempting to file, after the

11 extraordinary circumstances began, the link of causation between the extraordinary

12 circumstances and the failure to file is broken.' [citation omitted]"). Here, due to his long period

13 of inactivity, any possible link between petitioner's failure to timely file the pending federal

14 petition and Mackey's alleged misconduct of many years before, is broken. Spitsyn, 345 F.3d at

15 802. Cf. Doe, 661 F.3d at 1015 (petitioner entitled to equitable tolling "for his diligence" in

16 filing his petition within ten days of the return of his files once his attorney's deceit became

17 known); Roy, 465 F.3d at 970 (petitioners exercised diligence where they alleged specific efforts

18 pursued in order to file habeas petitions and filed their claims within a reasonable period of time

19 after the extraordinary circumstances were removed). As respondent notes, even taking as true

20 all of his bold claims by January 13, 2009, petitioner knew that no appeal or collateral attack had

21 been filed following his September 8, 2004 re-sentencing yet he did not file his first habeas

22 petition in state court until over a year later on March 21, 2010. Moreover, he did not file his

23 federal petition until January 20, 2011.

24    In short, here, petitioner has shown neither due diligence on his part nor that

25 extraordinary circumstances prevented him from filing (or made it impossible for him to file) his

26 federal habeas petition on time. Put another way, the court finds that petitioner has not carried

1   his burden of showing that he exercised reasonable diligence in pursuing post-conviction review

2   of his judgment of conviction following his re-sentencing.  In this regard, it appears petitioner

3   relied largely on family members to possibly pursue and monitor any efforts to appeal from his

4   re-sentencing or to collaterally attack his conviction.  Petitioner is very vague in his

5   representations to this court as to even what those efforts entailed during the relevant time period.

6   The court has noted, it is not as if petitioner was completely unfamiliar with the appellate

7   process.  The limited record before this court reflects that he was represented on appeal by court-

8   appointed counsel through the Central California Appellate Program (CCAP).  (Lod. Doc. Nos. 3

9   & 4.)  Eighteen counts of conviction were reversed on statute of limitations grounds, with the

10  remaining thirteen counts of conviction being affirmed on appeal, all of petitioner's substantive

11  challenges to those counts of conviction being rejected  and the matter only be remanded for re-

12  sentencing on those counts of conviction.  Petitioner, again through CCAP appointed counsel,

13  petitioned the California Supreme Court for review as to the affirmed counts of conviction and

14  that petition was summarily denied.   (Lod. Doc. No. 5.)  In short, petitioner had witnessed first

15  hand how, and through whom, appellate review was pursued.  Yet, after his re-sentencing

16  petitioner did nothing for approximately 4-1/2 years except occasionally have family members

17  talk to the attorney who had represented him on appointment in the trial court.

18          The Supreme Court in Pace required that a petitioner pursue his rights diligently at

19  all times prior to the filing of a federal habeas action.  544 U.S. at 410-11, 419.  See also

20  Johnson, 544 U.S. at 311 (finding that petitioner did not diligently pursue his claims where he

21  did not commence state post-conviction proceedings until three years after his judgment of

22  conviction was entered and twenty-one months after the AEDPA's effective date); Satterfield v.

23  Johnson, 434 F.3d 185, 196 (3rd Cir. 2006) (lack of diligence found where before the AEDPA

24  statute of limitations went into effect the petitioner waited nearly a year to initiate the process of

25  petitioning for relief and took more than eight months following the dismissal of his state court

26  petition to file his  federal habeas petition); LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005)

1   (The obligation to act diligently "does not pertain solely to the filing of the federal petition, rather

2   it is an obligation that exists during the period appellant is exhausting state court remedies as

3   well."); Neverson v. Farquharson, 366 F.3d 32, 43 (1st Cir. 2004) (equitable tolling denied

4   because of a lack of diligence where petitioner did not bring any collateral challenge (state or

5   federal) to his conviction until three years after his direct appeal was decided, did not do so until

6   four months after the AEDPA was enacted, offered no justification for this total delay of nearly

7   three years, and most of his habeas claims did not rely on alleged newly discovered evidence);

8   Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001) (equitable tolling denied where petitioner

9   waited over two years after his judgment of conviction became final and ten months after the

10  AEDPA's effective date to file his first federal habeas petition and did nothing during that period

11  to exhaust state remedies as to the ineffective assistance of counsel claims he sought to present).

12  In other words, a petitioner seeking equitable tolling of the AEDPA statute of limitations must

13  demonstrate that he diligently pursued his rights for the entire time following the underlying

14  judgment of conviction becoming final.

15          Here, petitioner has failed to make that showing.  The basis for petitioner's claims

16  were known to him during or shortly after his trial.  However, he waited almost four and a half

17  years after his re-sentencing to begin any effort seek review of those claims in state court.

18  Petitioner's explanation as to why he was inactive for so long is unpersuasive and unjustified.  In

19  Pace, the Supreme Court made clear that such inaction prevents the granting of equitable tolling

20  of the AEDPA statute of limitations.  544 U.S. at 418-19.  See also Roy v. Lampert, 465 F.3d

21  964, 972 n.5 (9th Cir. 2006) ("[T]he Supreme Court refused to recognize an equitable tolling

22  claim in Pace not just because of the delay between the state post-conviction and federal habeas

23  stages, but also because of the earlier, more egregious delay.")  As in Pace, a delay of several

24  years before acting reflects a lack of diligence which "precludes equity's operation."  Id. at 419.

25  See also Roy, 465 F.3d at 972 n. 5.

26  /////

1    Finally, even if petitioner's argument on this point were found to be persuasive, he

2  must also establish that the extraordinary circumstance he faced made it "impossible" to file his

3  petition on time, Harris, 515 F.3d at 1054, or that the extraordinary circumstance "stood in his

4  way" of doing so.  Pace, 544 U.S. at 418.  See also Lakey, 633 F.3d at 786; Ramirez v. Yates,

5  571 F.3d 993, 997 (9th Cir. 2009) ("The petitioner must additionally show that the extraordinary

6  circumstances were the cause of his untimeliness . . . and that the extraordinary circumstances

7  made it impossible to file a petition on time.").  He has not done so.  See Nelson v. Sisto, No. C-

8  11-0313 EMC (pr), 2012 WL 465443, at *9 (N.D. Cal. Feb. 13, 2012) ("Nelson has failed to

9  show that he acted with reasonable diligence to file his federal petition.  Nelson's evidence

10  indicates that approximately every few months from 2002-2006, he or a family member would

11  try to contact the appellate attorney . . . . A handful of efforts per year for four years, by a

12  prisoner who knows he has a deadline to file the federal petition, simply is not reasonable

13  diligence."); Verduzco v. Lopez, No. CV 10-8555-ODW (DTB), 2011 WL 5444086, n.3 at *5

14  (C.D. Cal. Sept. 26, 2011) (concluding that diligence was not demonstrated where the petitioner

15  failed to provide evidence that he followed up on status of attorney's evaluation of possible post-

16  conviction relief, and instead only stated that he or family members were in 'regular contact'

17  with counsel), report and recommendation adopted by 2011 WL 5444083 (C.D. Cal. Nov. 9,

18  2011); Dimas v. Ventura County Probation Dept., No. CV 10-4270-DDP (AJW), 2011 WL

19  7416508, at *4 (C.D. Cal. Mar. 24, 2011) ("Petitioner's complete inaction does not satisfy the

20  diligence requirement and, as a result, he is not entitled to equitable tolling, notwithstanding any

21  attorney malfeasance."), report and recommendation adopted by 2012 WL 601602 (C.D. Cal.

22  Feb. 23, 2012); Guerrero v. Yates, No. CIV S-10-0905 JAM DAD P, 2011 WL 590857, at *3

23  (E.D. Cal. Feb. 10, 2011) ("Petitioner's attempt to put the entire burden for . . . filing a timely

24  federal habeas petition on his daughter, fails to demonstrate reasonable diligence on his part . . . .

25  equitable tolling requires the petitioner to do more than sit on his hands."); Battiste v. Hegpath,

26  No. CIV S-09-1390-CMK-JAM P, 2010 WL 3855213, at *6 (E.D. Cal. Sept. 30, 2010)

1  (concluding that petitioner has not shown that he acted diligently in his attempts to have counsel

2  file his state or federal habeas in a timely fashion and although he had periods of communication

3  with counsel, there is no evidence that such communication occurred during the relevant time

4  periods), aff'd 2012 WL 150519 (9th Cir. 2012); Clarkson v. Williams, No. CV411-125, 2011

5  WL 6328367, at *3 (S.D. Ga. Nov. 14, 2011) ("Judicial systems are operated by human beings

6  who err.  Defendants know this.  They thus must make a reasonable inquiry, even if told they

7  may rest easy and do nothing, where a large amount of time marches by and nothing happens in

8  their cases."), report and recommendation adopted by 2011 WL 6328329 (S.D. Ga. Dec 16,

9  2011).

10        Because petitioner has failed to establish that he exercised reasonable diligence in

11  pursuing collateral review, he is not entitled to equitable tolling of the AEDPA statute of

12  limitations even if Mackey's conduct were to be found to constitute an extraordinary

13  circumstance.

14        B.  Petitioner's Illiteracy and Mental Disability

15        As noted, respondent argues that by taking almost two years before allegedly

16  discovering that Mackey had not filed a notice of appeal on his behalf, petitioner demonstrated

17  that he was not reasonably diligent in pursuing his rights.  In response, petitioner asserts that he

18  did not have the mental ability to do so.  (Doc. No. 42 at 2-3.)  Petitioner argues that he has a low

19  IQ, limited education, and a mental disability.  In connection with this issue bot petitioner and

20  respondent have submitted petitioner's medical and mental health records for the court's

21  consideration.

22        The records submitted by the parties do not demonstrate that petitioner's alleged

23  mental illness, low cognitive ability and learning disability were so disabling or severe as to

24  constitute "extraordinary circumstances" warranting the equitable tolling of the AEDPA statute

25  of limitations.  See Bills, 628 F.3d at 1100-01 (in order to demonstrate that a mental impairment

26  constituted an extraordinary circumstance justifying equitable tolling, a petitioner must show that

28

1  he "was unable rationally or factually to personally understand the need to timely file," or that his

2  "mental state rendered him unable personally to prepare a habeas petition and effectuate its

3  filing."); <u>Raspberry</u>, 448 F.3d at 1154 (holding that petitioner's ignorance of the law and inability

4  to correctly calculate the limitations period did not provide grounds for equitable tolling).  The

5  records submitted by the parties show that petitioner did not suffer from hallucinations or

6  delusions, was not suicidal or violent, and that although he suffered from occasional slight

7  depression and anxiety, he was stable and doing well with medication.  Mental health reports

8  indicate that petitioner was cooperative and functioning, that he was participating in the

9  outpatient mental health program, attending school, and was housed in general population.

10  Given such evidence, petitioner has failed to carry his burden of showing that he suffered from a

11  mental impairment which could be fairly characterized as an "extraordinary circumstance"

12  entitling him to equitable tolling of the AEDPA statute of limitations.

13                                          **CONCLUSION**

14            In accordance with the above, IT IS HEREBY RECOMMENDED that:

15            1.  Respondent's May 9, 2011 motion to dismiss on the grounds that petitioner's

16  federal habeas petition was filed beyond the one-year statute of limitations (Doc. No. 20) be

17  granted; and

18            2.  This action be dismissed.

19            These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within seven days after service of the objections.  The parties are

25  /////

26  /////

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: March 9, 2012.

4

5

6  DAD:4
   butte0510.mtd

7

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26